UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MICHAEL WAGNER** | : | **DOCKET NO. 16-cv-1446** |
| **VERSUS** | : | **JUDGE SUMMERHAYS** |
| **JACK HURST, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 49] filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants Jack Hurst, Nikki Davis, Ramona Poullard, and Justin Deville. Defendants have also filed a Motion to Strike [doc. 56] relating to several exhibits submitted in support of plaintiff's opposition and plaintiff has filed a Motion to Amend/Correct Response [doc. 60] to provide a corrected copy of one of the objected-to exhibits. The motions relate to a lawsuit brought by plaintiff Michael Wagner, an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("DOC"). Wagner, who is represented by counsel, complains about medical care he received while incarcerated at Allen Correctional Center ("ALC") in Kinder, Louisiana.

### I.
#### BACKGROUND

Wagner allegedly injured his back in December 2015 at ALC, when attempting to reach the top bunk on a bunkbed with no ladder. Doc. 1, p. 3. In his complaint, he asserts as follows: He sought care at ALC's medical unit on December 29, 2015, where he informed the nurse that he was having lower back pain and that his left leg felt as though it had fallen asleep. *Id.* at 3–4. The

nurse said he would be referred to a nurse practitioner, but no follow-up appointment occurred.[1] *Id.* at 4. On March 24, 2016, he returned to health services complaining of unbearable back pain and a limp. *Id.* He was prescribed Motrin. *Id.* He received a follow-up appointment with ALC physician Jack Hurst on March 28, 2016, who diagnosed him with a herniated disk, ordered an X-ray, and prescribed naproxen and a cane. *Id.* at 4–5; *see* doc. 49, att. 6, p. 2 (X-ray request and radiologist report). Hurst failed to follow up on his promise to order that Wagner be moved to a dormitory closer to the cafeteria and "pill shed," and when Wagner requested medication he was told that none had been ordered. Doc. 1, pp. 4–6.

Wagner fell on March 31, 2016, after his leg gave out, but medical personnel refused to transport him to the hospital. *Id.* at 5–6. Instead, his naproxen prescription was filled. *Id.* at 6. He returned to health services the next day, complaining of excruciating pain, and was admitted to the infirmary. *Id.* Hurst and Nurse Nikki Davis refused to let him stay there despite excruciating pain and had him charged with aggravated disobedience when he would not return to his dormitory. *Id.* at 7–8. He returned to the dormitory on crutches and fell again on April 14. *Id.* at 8. Again, he was denied a wheelchair and trip to the hospital. *Id.* Nurse Ramona Poullard told him that his injury and pain were his fault, because he put himself in prison, and returned him to his dorm with a pamphlet on back pain. *Id.* at 8–9. ALC Health Administrator Justin Deville contacted him shortly thereafter about a grievance he had filed and told him he would see about getting him a wheelchair. *Id.* Deville also told him that Hurst was refusing to treat Wagner because of his attitude. *Id.* at 9.

Wagner states that his pain medication was discontinued on May 5, and that on May 7 the pain became so unbearable that he attempted to hang himself in the shower. He continued to make emergency sick calls over the next few days but Hurst refused to see him. *Id.* at 9–10. He further

---

[1] Wagner asserts that after he filed a grievance relating to his medical care, he was told that no follow-up appointment had occurred because the nurse practitioner position at ALC was vacant during that time. Doc. 1, p. 4.

alleges that he fell twice on May 25, and made another sick call complaining of pain the following day, but that nothing was done. *Id.* at 10–11. Wagner continued to make sick calls throughout June and July, but alleges that Hurst refused to see him or to order a wheelchair. *Id.* at 11–12. Instead, Wagner's unit captain authorized use of a trash cart to pull Wagner around and Wagner used this method of transport from July 6 through August 1, 2016. *Id.* at 12.

Wagner's medical records reflect that, on April 4, 2016, he was examined by Hurst. Doc. 49, att. 3, p. 16. Hurst recorded that Wagner was a "<u>VERY</u> difficult person to communicate with" and ordered that he receive a CT scan and be returned to his dorm. *Id.* Hurst ordered the CT scan and an outside consult on April 6, 2016. *Id.* Wagner received his CT scan on April 27, 2016. *Id.* at 13. Hurst requested an outside consult with an orthopedist on May 31, 2016, noting Wagner's complaint of leg pain and noting a diagnosis of lumbar radiculopathy. *Id.* at 10–12. The consult was denied by the DOC on June 15 with the explanation that back pain is part of routine primary care and that the facility had the responsibility to obtain and fund routine primary care. *Id.* at 9. On that date, Hurst completed a referral form for the DOC Pain Management Clinic, listing Wagner's diagnosis as suspected lumbar radiculopathy. *Id.* at 7. Wagner returned to health services on June 20, at which time he was seen by Hurst and referred to a wellness program. *Id.* at 8.

Hurst's employment with ALC ended on or about June 27, 2016. Doc. 49, att. 3, p. 3. On August 1, Wagner returned to health services and was prescribed moist heat, a walker, and ibuprofen. *Id.* at 6. He was transferred to the pain management clinic at another DOC facility on August 12, 2016, but refused admission because he was still on suicide watch from his May 7 attempt. Doc. 1, pp. 12–13; doc. 49, att. 3, p. 3. Wagner complains that Poullard saw him at sick call on August 15, 2016, after he slipped in the shower, but refused to refer him for further care. Doc. 1, pp. 13–14. He asserts that Poullard told him to "stop crying like a bitch," that he would

receive no further care as long as she was there, and that "that white boy needs an attitude adjustment." *Id.* at 13. He also alleges that he was told that Deville had determined he would not receive any further treatment at ALC. *Id.* at 13–14.

Poullard denies that she ever berated Wagner. Doc. 49, att. 4, pp. 1–2. Her records from the August 15 visit reflect that she examined Wagner and consulted with the new ALC physician, Dr. Chatman (who is not a party to this suit), over Wagner's care. *Id.* at 4–5. Wagner was prescribed acetaminophen for two weeks and encouraged to use an ice pack. *Id.* Poullard's notes also reflect that Chatman ordered an X-ray, despite believing there was no need for one. *Id.* Wagner maintains that he continued to suffer from his back, without treatment, until he was transferred to David Wade Correctional Center on August 29, 2016. Doc. 1, pp. 13–14.

Wagner filed suit in this court on October 17, 2016, alleging violation of his right to be free from cruel and unusual punishment under the Eighth Amendment and negligent medical treatment under Louisiana tort law. As defendants he names Deville, Hurst, Davis, and Poullard, all of whom now move for summary judgment. Wagner opposes the motion, and defendants move to strike several of the exhibits he uses in support of that opposition.

## II.
## LAW & APPLICATION

### A. *Motion to Strike*

In opposition to defendants' Motion for Summary Judgment, Wagner submits several exhibits including declarations from other inmates at ALC and an expert report from Dr. Joel Nitzkin. *See* doc. 55, atts. 8, 11–14, 18–19 (inmate declarations); doc. 55, att. 16 (Nitzkin report). Defendants move to strike these exhibits on the grounds that (1) the Nitzkin report is untimely and not in the proper form to constitute competent summary judgment evidence and (2) the inmate declarations are incompetent summary judgment evidence because they are conclusory, lacking in

factual support, and/or irrelevant to Wagner's claims. Doc. 56, att. 1. Wagner opposes the motion and moves to amend his response by providing a corrected copy of the Nitzkin report. Docs. 60, 62.

### *1. Nitzkin report*

Defendants first move to strike the Nitzkin expert report because it was not submitted by the court's deadline (January 18, 2019) for submission of plaintiff's expert information and reports. *See* Doc. 44. They state that they did not receive the report until it was submitted with plaintiff's opposition to the summary judgment motion, over three months past the deadline for submission of Plaintiff's expert reports. Doc. 56, att. 1, p. 2. Wagner does not dispute these assertions but maintains that the report should be considered despite its untimeliness. Doc. 62.

As an initial matter, Wagner asserts that the motion to strike should be denied because such motions are disfavored and, under the 2010 amendments to Rule 56, a party may simply object to the admissibility of summary judgment evidence without filing a separate motion. Doc. 62, pp. 2–3; *see, e.g., Lee v. Offshore Logistical and Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017). Instead of rejecting this motion as brought in improper form, the court simply follows recent examples in this district and treats the motion as an objection raised under Rule 56(c)(2). *E.g., Pablo Palacios v. Cupples*, 2019 WL 1965855, at *1 (W.D. La. Apr. 29, 2019) (citing *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012)). Therefore we need not consider the fact that motions to strike under Rule 12(f) are disfavored and infrequently granted.

Under Federal Rule of Civil Procedure 26(a), a party must disclose the experts he intends to call at trial "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(1)(D). If a party fails to comply, he is "not allowed to use the information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Fed. R. Civ. P. 37(c).[2] Additionally, when a party discloses expert opinions after the court's scheduling order deadline, the court has the discretion to exclude the opinion and proposed testimony of the expert. *Geiserman v. MacDonald*, 893 F.2d 787, 790–91 (5th Cir. 1990). This discretion is based in the court's authority under Federal Rule of Civil Procedure 16 "to preserve the integrity and purpose of the pretrial order." *Id.* (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979). Under *Geiserman*, the court should consider the following factors before excluding evidence as untimely: (1) the party's explanation for its failure to produce the evidence; (2) the importance of the proposed evidence; (3) the potential prejudice in admitting the proposed evidence; and (4) the availability of a continuance to cure this prejudice. *In re Pool Prods. Distrib. Market Antitrst Litig.*, 2014 WL 4186770, at *2 (citing *Geiserman* at 791).

In this matter, the deadline for plaintiff's expert disclosures was set as January 18, 2019, in the scheduling order issued on October 4, 2018. Doc. 44. That order has not been modified in any fashion since it was entered, and Wagner has not sought an extension of the deadline. The only explanation Wagner offers for his failure to comply with the scheduling order deadline is that he has "had the report since November 2018, but for reasons unknown did not produce the report." Doc. 62, pp. 6–7. Absent a reasonable explanation for missing the expert report deadline by more than three months, allowing plaintiff to submit the untimely expert report now in response to the motion for summary judgment would undermine the integrity and purpose of the pretrial order. The first factor thus weighs against allowing plaintiff's untimely expert report.

---

[2] "[U]nder Rule 37(c), the presumptive sanction for failing to disclose a testifying expert or supply a required expert report or summary disclosures is to exclude or limit the expert's testimony unless the failure was substantially justified or harmless." *Honey-Love v. United States*, 664 Fed.Appx. 358, 362 (5th Cir.2016) (citing Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 26 Advisory Committee's Note (1993)

As to the third factor, plaintiff argues "the present submission causes the Defendants no prejudice as they offered no witness or other evidence to refute the opinions in the report." Doc. 62 at 6. But that is precisely the point: defendants are prejudiced because they have not had the opportunity to designate competing experts due to plaintiff's failure to timely disclose his expert witness and report. Furthermore, defendants have not had the opportunity to conduct any needed discovery regarding plaintiff's expert. Allowing plaintiff to identify expert witnesses at this late stage would, at a minimum, require the Court to provide defendants an opportunity to identify a competing expert and reopen discovery. This matter was filed over two and a half years ago and trial is currently set for July 24, 2019. With the three-week extension [doc. 52] already afforded to plaintiff to respond to the motion for summary judgment, the prejudice to the defense could not be mitigated without reopening of discovery and continuing the trial date.

The fourth factor also weighs against plaintiff. Given plaintiff's lack of excuse for his failure to disclose, his noncompliance is not substantially justified and "[a] continuance is hardly an effective sanction . . . since it places the more pronounced burden not on the guilty party but on the Court and the opposing party." *Williams v. Marinemax of Central Fla., LLC*, 773 F.Supp.2d 1265, 1267 (N.D. Fla. 2011). Further, continuances for discovery misconduct allow parties to disregard Rule 26 and this Court's scheduling order with impunity. If continuances were granted as a matter of course for violations of Rule 26, the rule could always be disregarded with impunity, and "the failure to satisfy the rules would never result in exclusion, but only in a continuance." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004); *see also Williams*, 773 F.Supp.2d at 1267. While a continuance here would give defendants more time to review the late disclosures, such a measure would neither punish plaintiff for his conduct nor deter similar

behavior in the future. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 573 (5th Cir.1996).

Finally, with regard to the second factor, Nitzkin's report is of substantial importance to plaintiff's case because it provides a medical opinion on the likely effect of earlier surgical intervention and the pain that Wagner was likely experiencing as he sought medical attention. However, "the claimed importance of [the] expert testimony merely underscores the need for [plaintiff] to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible." *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996); *see also Hamburger* at 883. While the importance of Nitzkin's proposed testimony weighs against exclusion of that testimony, the importance of proposed testimony cannot 'singularly override the enforcement of local rules and scheduling orders.'" *Hamburger* at 883 (quoting *Geiserman* at 792). Because the first, third and fourth factors clearly militate against the admission of Nitzkin's opinion, the Court will not consider Nitzkin's opinion in ruling on the motion for summary judgment.

### 2. *Inmate declarations*

In support of his opposition Wagner offers declarations from several other inmates at ALC. These inmates complain of their own interactions with ALC medical staff and report observations of Wagner suffering from his injuries and/or being treated dismissively by defendants. *See* doc. 55, atts. 8, 11–14, 18. Inmate Hollyfield also provides annotations on an aerial photograph of ALC, describing the distances plaintiff was allegedly made to travel without a wheelchair as measured by Hollyfield. Doc. 55, att. 8. Defendants move to strike these declarations as conclusory accusations unsupported by factual references and as irrelevant insofar as they relate to care provided to other inmates. Doc. 56, att. 1, pp. 5–7.

All of the inmate declarations purport to be based on personal observation. The court is capable of disregarding any legal conclusions contained in these statements, focusing on the events allegedly observed, and determining their relevance to Wagner's claims. Accordingly, the Motion to Strike/objections are denied as to these declarations.

### B. *Motion for Summary Judgment*

#### 1. *Legal Standards*

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268,

270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## 2. *Application to This Case*

### a. *Deliberate Indifference Claims*

Wagner first alleges that he is entitled to damages under 42 U.S.C. § 1983 because the medical care he received from defendants amounted to a violation of his rights under the Eighth Amendment. Deliberate indifference to a prisoner's serious medical needs by prison officials violates the Eighth Amendment and therefore gives rise to a claim for damages against state actors under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Under this theory, a prison official is not liable unless he both knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind;" thus the test is "[s]ubjective recklessness" as used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (quoting *Farmer*, 511 U.S. at 838–40). A prisoner's disagreement with his treatment does not constitute deliberate indifference, absent exceptional circumstances. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Instead, the prisoner must submit evidence to show that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct evincing a wanton disregard for serious medical needs. *Id.*

Wagner points to the fact that Hurst and Davis were later terminated from ALC, and to Hurst's record of having his license suspended for substance abuse as his reason for not prescribing stronger pain medication. He complains that he remained wheelchair-bound from August 2016

until his release from prison in May 2018, at which point he asserts that he had emergency surgery and was then able to walk again. *Id.* at 19–20. He produces accounts from other inmates who were dissatisfied with their own medical care at ALC and/or report witnessing Wagner in pain and ALC medical staff behaving dismissively towards Wagner, and he describes the distance he was made to travel without a wheelchair. *Id.* at 17–20.

Wagner does not dispute Hurst's diagnosis. The accounts he provides from other inmates do not contradict the record of his care provided by the defense. His disagreement with his treatment relates only to delays in care, the fact that a wheelchair was never prescribed, and the lack of any greater intervention. The delays cited here, however, that were within the defendants' control amount to mere days. The medical staff's decision not to provide a wheelchair or other accommodations, choice of what painkillers were prescribed, whether to recommend surgery, and any restrictions placed on Wagner due to his suicide attempt, are a "classic example of a matter of medical judgment." *Gobert*, 463 F.3d at 346. Although Wagner complained of continued pain and difficulty getting around on his cane/crutches, the Eighth Amendment does not protect against mere discomfort or inconvenience. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). Several district courts have rejected claims based on injuries similar to Wagner's, finding that there was no showing of deliberate indifference where the inmate was provided with pain medication and other treatment and only complains of the fact that different or additional treatment was not ordered for his injury. *E.g., Estes v. Bower*, 2002 WL 628755, at *2–*3 (N.D. Tex. Apr. 17, 2002), aff'd, 73 Fed. Appx. 747, 2003 WL 22013460 (5th Cir.2003); *Lusk v. Dallas Cnty. Sheriff's Dep't*, 2002 WL 31757706 (N.D. Tex. Nov. 29, 2002); *Green v. Doe*, 2004 WL 1152035 (N.D. Tex. May 24, 2004); *Sides v. Abangdon*, 2010 WL 4537914 (S.D. Miss. Nov. 2, 2010); *see also Payton v. Gusman*, 2013 WL 5530280, at *11 (E.D. La. Oct. 7, 2013) (collecting cases). Given the care

provided for Wagner's back injury – including pain medication, diagnostic imaging, attempts to secure an outside consult, and ultimate referral to a pain management program – Wagner cannot show that his treatment evinces deliberate indifference to his serious medical needs on the part of any defendant.

To the extent that Wagner intends to raise a claim based on the manner defendant Ramona Poullard allegedly spoke to him, this claim cannot survive a motion for summary judgment. "[M]ere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations." *Robertson v. City of Plano, Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (alteration omitted); *see also Hines v. Cain*, 2007 WL 891880 at *4 (E.D. La. Mar. 20, 2007) (collecting cases); *see also Hudson v. Univ. of Tex. Medical Branch*, 441 Fed. App'x 291, 292–93 (5th Cir. 2011) (finding that mere threats also fail to support a claim of retaliation). Allegations of callous or rude behavior alone in the provision of medical care also fail to support a deliberate indifference claim. *Atkins v. Lofton*, 373 Fed. App'x 472, 473 n. 1 (5th Cir. 2010) (unpublished); *Frederick v. Pittman*, 2014 WL 4729407 at *8 (S.D. Tex. Sep. 23, 2014). Even if Poullard delivered each utterance as alleged, these utterances would be insufficient to show a constitutional violation in light of the constitutional adequacy of Wagner's medical treatment.

### b. Negligence

The Louisiana Medical Malpractice Act ("LMMA"), LA. REV. STAT. § 40:1231.1 *et seq.*, governs claims of malpractice against qualified health care providers. Under the LMMA, malpractice is defined as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." LA. REV. STAT. § 40:1231.1(13). Additionally, Louisiana law recognizes that prison

officials have a duty to provide inmates with "reasonable medical care." *Harper v. Goodwin*, 930 So.2d 1160, 1163 (La. Ct. App. 2d Cir. 2006).

A plaintiff claiming medical malpractice by a physician must establish, by a preponderance of the evidence: (1) the defendant's standard of care, (2) his breach of that standard, and (3) a causal connection between the breach and the claimant's injuries. LA. REV. STAT. § 9:2794(A). Nurses who perform medical services are subject to the same standard of care as physicians: to exercise the degree of skill ordinarily employed under similar circumstances by members of the profession in good standing in the same community or locality, and to use reasonable care and diligence, along with their best judgment, in their application of skill to the case. *Little v. Pou*, 975 So.2d 666, 674–75 (La. Ct. App. 2d Cir. 2008). Expert testimony is usually required to establish the applicable standard of care. *Schultz v. Guoth*, 57 So.3d 1002, 1006–07 (La. 2011). However, an exception is made where "the negligence is so obvious that a lay person can infer [it] without the guidance of expert testimony." *Id.*

Given the record of treatment provided, the alleged negligence in this case is not obvious enough to be found without expert guidance. Because the court has determined that Wagner's expert opinions are inadmissible, it finds no basis for imposing liability on any defendant under the negligence claims. Accordingly, the Motion for Summary Judgment must be granted.

**THUS DONE** in Chambers this 21st day of May, 2019.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE